(911 P.2d 811)
No. 72,337

Bob L. McGann, *Appellant*, v. David R. McKune, Warden of
the Lansing Correctional Facility; and The Kansas
Parole Board, *Appellees.*

Opinion filed September 1, 1995.

*Charles J. Cavenee*, of Legal Services for Prisoners, Inc., of Lansing, for appellant.

*Lawrence J. Logback*, assistant attorney general, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., GERNON, J., and D. KEITH ANDERSON, District Judge, assigned.

GERNON, J.: Bob L. McGann appeals from the denial of his habeas corpus petition. We affirm.

McGann was sentenced for aggravated robbery and later for aggravated escape from custody. He was eventually granted parole, but that parole was revoked. He has been repeatedly passed for parole, and that fact was the focus of McGann's habeas corpus petition and, therefore, this appeal.

McGann contended in his petition that he had a right to parole and that its revocation violated his Fifth and Fourteenth Amendment rights and resulted in a denial of equal protection and due process.

The State eventually dismissed the criminal charges which led to the revocation of McGann's parole. The dismissal of the charges, McGann argues, entitles him to equal protection status and to benefit from a 1993 amendment to K.S.A. 75-5217(b) that allowed imprisonment for "technical" violations for only 90 days and not a revocation, which results in serving the balance of any term.

The amendment McGann sought to invoke became effective July 1, 1993. McGann's revocation occurred in September 1991.

The district court found that the amendment was not retroactive and that the fact that the legislature did not make it retroactive was not a constitutional equal protection violation.

An equal protection argument might have some validity if it could be said that the legislation treats " 'arguably indistinguishable' classes of people differently," *Smith v. Printup*, 254 Kan. 315,

321, 866 P.2d 985 (1993), and McGann can show that he is a member of such a class and has been treated differently.

Whether legislation passes constitutional muster depends on the relationship borne by the challenged classification to the objective sought by its creation. *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 774, 830 P.2d 41 (1992). Justice Allegrucci, writing in *Stephenson*, noted:

"The examination of the relationship between the classification and the objective has become quite formalized. The United States Supreme Court articulates and applies three degrees of scrutiny when examining the relationship. The various levels of scrutiny were reviewed by this court in *Farley v. Engelken*, 241 Kan. 663, 669-70, 740 P.2d 1058 (1987).

"The least strict scrutiny is referred to as the 'rational basis' test. Relevance is the only relationship required between the classification and the objective. In *McGowan v. Maryland*, 366 U.S. 420, 425, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961), it was explained that '[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.' Insofar as the objective is concerned, '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' 366 U.S. at 426. Thus, it appears that the legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. As noted by Justice Marshall in his dissent in *Lyng v. Automobile Workers*, 485 U.S. 360, 375, 99 L. Ed. 2d 380, 108 S. Ct. 1184 (1988):

" 'The Court fails to note, however, that this standard of review, although deferential, " 'is not a toothless one.' " *Mathews v. De Castro*, 429 U.S. 181, 185 (1976), quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976). The rational-basis test contains two substantive limitations on legislative choice: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals. In an alternative formulation, the Court has explained that these limitations amount to a prescription that "all persons similarly situated should be treated alike.' "

"The intermediate level of scrutiny is termed 'heightened scrutiny.' *Farley v. Engelken*, 241 Kan. at 669. 'It requires the statutory classification to substantially further a legitimate legislative purpose.' 241 Kan. at 669. Another, perhaps stronger, statement of the heightened scrutiny test is that the classification 'must serve important governmental objectives and must be substantially related to achievement of those objectives.' *Craig v. Boren*, 429 U.S. 190, 197, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976).

"The highest level of scrutiny requires that the defendant demonstrate 'that the classification is necessary to serve a compelling state interest.' *Farley v. Engelken*, 241 Kan. at 670. This 'strict scrutiny' test has been applied by the United States

Supreme Court in cases involving classifications such as race and fundamental rights guaranteed by the federal Constitution. It has not been advocated by parties to the present case that the classification created by 44-510d(a)(23) should be subjected to strict scrutiny." 250 Kan. at 774-75.

"Parole," as that term is commonly used, only exists for inmates who committed crimes prior to July 1, 1993, and are ineligible for conversion, or for those who are convicted of off-grid crimes. K.S.A. 1994 Supp. 22-3717(a), (d). Moreover, parole allows an inmate to be released from prison prior to the completion of his or her sentence if the Kansas Parole Board determines the inmate can be released without detriment to society or the inmate and if the inmate agrees to abide by certain conditions. K.S.A. 1994 Supp. 22-3717(g), (n).

"Postrelease supervision," as that term is used in the Kansas Sentencing Guidelines Act (KSGA), "means the release of a prisoner to the community *after* having served a period of imprisonment." (Emphasis added.) K.S.A. 1994 Supp. 21-4703(p). "Persons sentenced for crimes . . . committed on or after July 1, 1993, will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence." K.S.A. 1994 Supp. 22-3717(d)(1).

There is clearly a distinction between a parolee and an individual subject to postrelease supervision. A parolee has been allowed to leave the confines of prison prior to the total time he or she was sentenced to serve. While out on parole, the parolee is subject to serving out the remainder of his or her prison sentence upon a violation and subsequent revocation of parole status. An individual on postrelease supervision has already completed the prison portion of the sentence before being released. Therefore, the class of inmates subject to parole is arguably distinguishable from the class of inmates who committed crimes on or after July 1, 1993, and are subject to postrelease supervision upon completion of their allotted prison term.

The legislative history of the KSGA reveals that the Kansas Legislature relied upon the guidelines of the state of Washington when formulating sentencing guidelines for Kansas. See *State v. Richardson*, 20 Kan. App. 2d 932, 935, 901 P.2d 1 (1995). Therefore,

a consideration of Washington law addressing a similar situation arising under its guidelines is helpful to the present analysis.

In *In re Evich*, 50 Wash. App. 84, 747 P.2d 480 (1987), Evich was originally convicted of second-degree murder and sentenced to a life term. He was eventually placed on parole, but in 1985, after Washington had implemented its new sentencing guidelines, Evich's parole was revoked. He was given a new minimum prison term of 48 months. Evich then filed a personal restraint petition, arguing that the new minimum term was excessive and that he should have been sentenced to a maximum term of 60 days for each violation pursuant to a new statute under the guidelines which provided that if the court found a violation had occurred, it could only order the offender to be confined for a period not to exceed 60 days. 50 Wash. App. at 85-87.

The question presented to the Washington Court of Appeals was whether the new guidelines statute applied to and controlled the setting of an additional minimum term following a parole revocation on a pre-guidelines conviction.

Noting that the new guidelines did not repeal the prior system of parole applicable to those persons who committed crimes prior the effective date of the guidelines, the court held that the setting of a new minimum term of confinement following a parole revocation is a substantially different proceeding from the imposition of sanctions provided in the new guidelines statute. 50 Wash. App. at 87-88. "[Sixty]-day sanctions exist only to enforce compliance with conditions imposed as part of an SRA [guidelines] sentence. They are not designed to further other goals such as rehabilitation and deterrence." 50 Wash. App. at 88.

"In contrast to the apparent purpose of the [60-day] sanctions, the purpose of parole revocation under the indeterminate sentencing system was to advance rehabilitation and to deter parolees from conduct that violated parole conditions. Under that system, a person could be released on parole prior to serving a full sentence in an effort to speed up the rehabilitative process. If the effort failed, the consequences of parole revocation were often far more serious than 60 days of confinement." 50 Wash. App. at 89.

The court refused to find a violation of equal protection and denied Evich's petition. 50 Wash. App. at 90-91.

As in *Evich*, the clear intent of the Kansas Legislature was to leave the Kansas Parole Board with authority to act with respect to parole revocations involving persons serving pre-guidelines sentences. See K.S.A. 1994 Supp. 22-3717; *Evich*, 50 Wash. App. at 90. Parolees under an indeterminate sentence are a distinguishable class from individuals on postrelease supervision under the KSGA.

Based upon these facts, McGann fails to demonstrate a violation of the Equal Protection Clause. See *Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, 982, 850 P.2d 893 (1993) (the burden of proof must be sustained by the party attacking the constitutionality of a statute).

Affirmed.