**Dean JONES, Petitioner,**

v.

**L.E. BRUCE, et al., Respondents.**

**No. 95–3147–DES.**

United States District Court,
D. Kansas.

March 28, 1996.

Dean A. Jones, El Dorado Correctional Facility, El Dorado, KS, Pro Se.

John K. Bork, Office of the Attorney General, Kansas Judicial Center, Topeka, KS, for L.E. Bruce, Attorney General of Kansas.

---

**MEMORANDUM AND ORDER**

SAFFELS, Senior District Judge.

This matter is before the court upon a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the limited retroactivity provision of the Kansas Sentencing Guidelines Act, K.S.A. 21–4724, as violative of his equal protection rights.

In April of 1985, petitioner was sentenced to concurrent terms of not less than three years nor more than ten years on one count of the sale of marijuana, one year for possession of marijuana, and not less than one year nor more than five years on each of three separate counts of burglary. The sentencing judge ordered petitioner released on probation for a term of three years. In January of 1986, petitioner pled guilty to aggravated escape from custody and was sentenced to a consecutive term of one to two years. In April of 1986, petitioner's probation was revoked for violating the conditions of his parole. Based upon the foregoing, petitioner's controlling term was four to twelve years.

In August of 1993, petitioner filed a motion to convert his sentence under the Kansas Sentencing Guidelines Act. The motion was denied. The denial was affirmed by the Kansas Court of Appeals[1] and the Kansas Supreme Court denied review.

Petitioner was paroled on July 18, 1994. His parole was revoked November 11, 1994 for absconding parole supervision. His next consideration by the Parole Board will be in October of 1996.

### Equal Protection Challenge

The Kansas Sentencing Guidelines Act (KSGA) applies to crimes committed on or after July 1, 1993. K.S.A. 21–4704 and 21–4705. K.S.A. 21–4724(b)(1), however, provides limited retroactivity of the sentencing guidelines for certain offenders:

> Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprison-

---

1. The Court of Appeals relied, in part, on *Chiles v. State of Kansas*, 254 Kan. 888, 869 P.2d 707 (1994), *cert. denied* —— U.S. ——, 115 S.Ct. 149, 130 L.Ed.2d 88 (1994). In *Chiles*, an equal protection challenge to K.S.A. 21–4724 was rejected, the court reasoning that the extension of retroactivity to less serious offenders but not to persons convicted of more serious crimes was rationally related to the purpose of reducing the prison population while protecting public safety.

ment grid block on either sentencing grid, in grid blocks 5–H, 5–I or 6–G of the nondrug grid or in grid blocks 3–H or 3–I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A.1994 Supp. 21–4705 and amendments thereto, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provisions specified in the Kansas sentencing guidelines act.

Department of Correction records place petitioner within grid block 2 of the drug grid and, therefore, outside the statute's limited retroactive provision.[2]

■ Petitioner asserts an equal protection violation, arguing (1) it is patently unfair to limit retroactive application of the Kansas sentencing guidelines to some but not all inmates sentenced prior to the effective date of the sentencing guidelines and (2) that legislative intent is thwarted by not applying the sentencing guidelines to petitioner.

■ Varying standards of review apply to an equal protection challenge depending on the type of classification at issue. Where fundamental rights or a suspect classification are involved, strict scrutiny is the appropriate standard of review. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). An intermediate standard has been applied to gender-based classifications. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397 (1976). Absent classifications which implicate such special interests, the rational basis test is employed. *Rodriguez, supra,* 411 U.S. at 17, 93 S.Ct. at 1288.

■ Although petitioner generally states he has been discriminated against by the fact that he is not afforded retroactive application of the sentencing guidelines, there is no evi-

dence that K.S.A. 21–4724(b) was motivated by a racially discriminatory purpose. At most, the legislature was aware at the time the limited retroactivity provision was adopted that minority defendants were incarcerated, on the average, for a longer period of time than caucasian defendants.[3] Disproportionate impact, however, does not trigger strict scrutiny review. *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *see also United States v. Angulo–Lopez,* 7 F.3d 1506, 1509 (10th Cir.1993) (statistics showing that heightened penalties for "crack" cocaine offenses had a disproportionately adverse impact upon blacks did not trigger strict scrutiny review) *cert. denied* —— U.S. ——, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994); and *McCleskey v. Kemp,* 481 U.S. 279, 291–99, 107 S.Ct. 1756, 1766–71, 95 L.Ed.2d 262 (1987) (equal protection challenge relying on study which indicated black defendants convicted of murdering white victims were more likely to receive the death penalty was rejected).

Petitioner argues it is unfair that his sentence is nearly double that of a similar offender sentenced under the KSGA. Legislatures, however, are constantly reevaluating crimes and their attendant penalties. These changes, as well as establishing effective dates for such changes, is an important responsibility of the legislature. *Warden v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). *See also Baker v. Director, United States Parole Commission,* 916 F.2d 725, 727 (DC Cir.1990) (equal protection challenge rejected where inmate treated similarly to "those who were sentenced at the same time as he under the laws applicable at that time"); *United States v. Sorondo,* 845 F.2d 945, 948 (11th Cir.1988) ("Congress is certainly empowered to pass

---

**2.** Although petitioner's traverse to respondent's answer makes various unsupported arguments concerning an improper grid classification, the petition filed in this matter does not contest petitioner's grid placement. That issue, therefore, is not properly before the court.

**3.** Information presented to the Senate Judiciary Committee indicates the Sentencing Commission, after reviewing approximately 60% of the

felony cases sentenced in 1989, found that non-whites tended to be sent to prison more often, received longer sentences and served longer periods before release from prison. The disparities were greatest in large judicial districts and primarily centered on property crimes. Coates, Summary of the Recommendations of the Sentencing Commission, pp. 3–5 (Report to Senate Committee on Judiciary, January 14, 1992).

laws which lessen the severity of previous sentencing provisions, and it need not do so retroactively."); and *United States v. Haines,* 855 F.2d 199, 200 (5th Cir.1988) ("[T]here is absolutely no constitutional authority for the proposition that the perpetrator of a crime can claim the benefit of a later enacted statute which lessens the culpability level of that crime after it was committed.").

■ K.S.A. 21–4724(b)(1) also distinguishes between inmates convicted of more serious offenses and those convicted of less serious offenses. Those who commit crimes classified by the Kansas legislature as high severity-level crimes do not belong to a suspect class. *Compare Shifrin v. Fields,* 39 F.3d 1112, 1114 (10th Cir.1994) (violent or repeat offenders are not a suspect class). Thus, petitioner's equal protection challenge depends on whether the classification is rationally related to a legitimate purpose.

> [R]ational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." ... Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." ... Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." ...

*Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993).

■ One purpose behind the limited retroactivity provision of the KSGA was to assist in easing overcrowding of prisons without jeopardizing public safety or compromising field services. Minutes of the Senate Committee on Judiciary, January 24, 1992. The legislature is not required to perfectly accomplish any goal or purpose in order to survive an equal protection challenge. *Compare Horoshak v. State of Minnesota,* 469 N.W.2d 474, 475–76 (Minn.1991) ("Although [the statute providing for limited retroactivity] does not fully remedy the causes of disparate sentences, legislatures may adopt regulations that only partially ameliorate a perceived evil."); *see also Marshall v. United States,* 414 U.S. 417, 428, 94 S.Ct. 700, 707, 38 L.Ed.2d 618 (1974) ("[L]egislative classifications need not be perfect or ideal.").

Petitioner argues the goals of the KSGA are thwarted by denying him retroactive application of the Act and, moreover, the conversion of his sentence would promote the goals of the KSGA because the prison population would be reduced by releasing an offender who is not violent or a danger to the public. The issue, however, is not whether the legislation perfectly accomplishes its goals but whether the legislation was prompted by a legitimate goal and whether there is a rational basis for the classification.

The limited retroactivity provided by K.S.A. 21–4724 is rationally related to the goal of reducing prison overcrowding without compromising public safety or field services. As such, petitioner's equal protection challenge fails.

■ A related argument of petitioner deserves brief comment. The revocation of petitioner's parole in November of 1994 subjected him to serving the remainder of his sentence. Conversely, individuals sentenced under the KSGA are subject to a maximum of 90 days incarceration for violating the conditions of their postrelease supervision. The analysis by the Kansas Court of Appeals in *McGann v. McKune,* 21 Kan.App.2d 798, 911 P.2d 811 (1995), as summarized in the following passage, is approved and adopted herein:

> There is clearly a distinction between a parolee and an individual subject to postrelease supervision. A parolee has been allowed to leave the confines of prison prior to the total time he or she was sentenced to serve. While out on parole, the parolee is subject to serving out the remainder of his or her prison sentence upon a violation and subsequent revocation of parole status. An individual on postrelease supervision has already completed the prison portion of the sentence before being released. Therefore, the class of inmates subject to parole is arguably distinguishable from the class of inmates who committed crimes on or after July 1, 1993, and are subject to postrelease supervision upon completion of their allotted prison term.

Plaintiff's equal protection challenges to the Kansas Sentencing Guidelines Act are rejected.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is dismissed and all relief denied.