NOT DESIGNATED FOR PUBLICATION

No. 116,365

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MAX CHARLES KNOPP,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed September 1, 2017. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Amy E. Norton*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

*Per Curiam*:  Max Charles Knopp entered *Alford* pleas to two counts of aggravated indecent liberties with a child in 2012. See *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The district court sentenced Knopp to 144 months' inprisonment followed by lifetime postrelease supervision, as provided in K.S.A. 2009 Supp. 22-3717(d)(1)(G). Knopp now challenges his sentence of lifetime postrelease supervision, arguing that the 2013 amendments to K.S.A. 22-3717 required the district court to sentence him to 36 months' postrelease supervision. This court decided this issue against Knopp's position in *State v. Herrmann*, 53 Kan. App. 2d 147, 384 P.3d 1019

1

(2016), *rev. denied* 306 Kan. ___ (July 25, 2017). While Knopp argues that *Herrmann* was wrongly decided, none of his arguments are persuasive. Accordingly, we affirm the district court's ruling.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2012, as part of a plea agreement with the State, Knopp entered *Alford* pleas to two counts of aggravated indecent liberties with a child based on crimes that occurred between August 2009 and January 2010. See *Alford*, 400 U.S. 25. An *Alford* plea allows a defendant to plead guilty without admitting the facts of the offense or while maintaining his or her innocence in order to obtain a favorable plea deal. See *State v. Case*, 289 Kan. 457, 460, 213 P.3d 429 (2009). On January 30, 2013, the district court sentenced Knopp to a total of 144 months in prison followed by lifetime postrelease supervision.

Knopp appealed to this court, arguing that imposing lifetime postrelease supervision violated the United States and Kansas constitutional prohibitions against cruel and unusual punishment. *State v. Knopp*, No. 109,534, 2014 WL 4231231, at *1 (Kan. App. 2014) (unpublished opinion). This court concluded that lifetime postrelease supervision was not cruel and unusual punishment and affirmed the sentence. 2014 WL 4231231, at *6, 8. The Kansas Supreme Court denied review on July 21, 2015.

In April 2016, Knopp filed a pro se habeas motion under K.S.A. 60-1507 arguing that he had received ineffective assistance of counsel because his attorney had misled him into pleading guilty and accepting a term of lifetime postrelease supervision when the plea agreement provided that he would receive a term of 36 months' postrelease supervision. Knopp contended that the State should be bound by the plea agreement, so he should be resentenced to 36 months' postrelease supervision.

2

On May 20, 2016, the district court summarily denied Knopp's motion without holding a hearing. The district court denied the motion because it lacked factual support. In particular, the district court noted that (1) the plea agreement stated in bold type that Knopp would be "'subjected to lifetime postrelease supervision,'" (2) the district court had confirmed with Knopp on two separate occasions during the plea hearing that he would be subject to lifetime postrelease supervision, and (3) Knopp had confirmed that there were no other promises, offers, or conditions made to him to induce his plea that were not in writing. The district court further concluded that Knopp's motion essentially claimed that his sentence was illegal because the Kansas sentencing statutes required the court to impose lifetime postrelease supervision.

Knopp appeals.

### THE DISTRICT COURT DID NOT ERR IN DENYING KNOPP'S REQUEST TO MODIFY HIS PERIOD OF POSTRELEASE SUPERVISION FROM LIFETIME TO 36 MONTHS

On appeal, Knopp argues that his sentence is illegal because he should have been sentenced to 36 months of postrelease supervision under K.S.A. 2016 Supp. 22-3717(d)(1)(D) rather than lifetime postrelease supervision under K.S.A. 2016 Supp. 22-3717(d)(1)(G) based on the 2013 amendments to K.S.A. 22-3717.

Although Knopp raises these arguments for the first time on appeal, this court may consider illegal-sentence issues at any time, including for the first time on appeal. K.S.A. 22-3504(1); *State v. Luarks*, 302 Kan. 972, 975, 360 P.3d 418 (2015). An illegal sentence includes a sentence that does not comply with the statutory provisions either in term or in character to be served. *State v. Gray*, 303 Kan. 1011, 1014, 368 P.3d 1113 (2016). Whether Knopp's sentence is illegal depends on which of the two statutory provisions applies to him, and answering this question requires this court to interpret Kansas sentencing statutes. This court reviews statutory-interpretation issues independently, with

3

no required deference to the district court's conclusions. *State v. Brown*, 303 Kan. 995, 1005, 368 P.3d 1101 (2016).

K.S.A. 2016 Supp. 22-3717(d)(1)(G) provides that anyone convicted of a sexually violent crime committed after July 1, 2006, "shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." Aggravated indecent liberties with a child is a sexually violent crime as that term is used in the statute. K.S.A. 2016 Supp. 22-3717(d)(5)(C). Knopp was convicted of two counts of aggravated indecent liberties with a child that occurred between August 2009 and January 2010. The district court concluded that this provision applied to Knopp and sentenced him to lifetime postrelease supervision.

On the other hand, K.S.A. 2016 Supp. 22-3717(d)(1)(D) (as amended in 2013) provides fixed terms for postrelease supervision—up to 36 months based on the severity of the crime—for those sentenced for certain crimes, including sexually violent crimes. That provision applied to offenders sentenced for crimes "committed on or after July 1, 1993." K.S.A. 2016 Supp. 22-3717(d)(1). Knopp committed his crime in 2009 or 2010, At first glance, this provision could also apply to him.

Knopp argues that both subparagraphs (D) and (G) apply to him, so the statute is ambiguous and must be construed in favor of the accused under the rule of lenity. See *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). The rule of lenity would thus require a court to apply subparagraph (D) and impose the shorter postrelease-supervision term.

The most fundamental rule of statutory interpretation is that the intent of the legislature governs if that intent can be determined. *State v. Toliver*, 306 Kan. 146, Syl. ¶ 1, 392 P.3d 119 (2017); *Salina Journal v. Brownback*, 54 Kan. App. 2d 1, Syl. ¶ 3, 394 P.3d 134 (2017). When analyzing a statute to determine legislative intent, appellate

4

courts must consider the various provisions of the same statute "*in pari materia*" and reconcile and harmonize them if possible. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). Appellate courts also presume that the legislature did not intend for any portion of a statute to have no meaning or application. 302 Kan. at 574.

If Knopp's argument was given any credence, subparagraph (G) would never apply to a case. In his reading, subparagraph (D) applies to all sexually violent crimes committed from July 1, 1993, forward—even those committed on or after July 1, 2006, where subparagraph (G) seems to apply. According to Knopp's reading of the statute a court would always be required to apply the shorter term provided in subparagraph (D) under the rule of lenity.

This court has considered this problem with Knopp's argument, when made by another defendant, in *Herrmann*.

The *Herrmann* court first looked at the plain language of K.S.A. 2015 Supp. 22-3717, focusing on subsection (d)(1). That provision provides that "[p]ersons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph (G), will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence as follows" and then prescribes the postrelease-supervision terms in the subsequent subparagraphs. K.S.A. 2015 Supp. 22-3717(d)(1). *Herrmann* determined that the plain language of (d)(1) meant that "persons sentenced for crimes committed after July 1, 1993, will not be eligible for parole; instead, they will be subject to mandatory postrelease supervision as provided in the subparagraphs that follow" and that the statute expressly stated the postrelease-supervision terms "provided in the subparagraphs that follow *do not apply* to 'persons subject to subparagraph (G).'" 53 Kan. App. 2d at 152. In *Herrmann*, because the defendant was subject to subparagraph (G), the court concluded

that no other subparagraph—including subparagraph (D)—applied to him. 53 Kan. App. 2d at 152.

*Herrmann* also discussed that the provisions of subparagraphs (D) and (G) apply to distinct classes of persons. The court noted that K.S.A. 22-3717 as a whole applies to all persons committed of a crime after July 1, 1993, while subparagraph (G) was added to create an explicit exception for persons convicted of sexually violent crimes committed after July 1, 2006. 53 Kan. App. at 153 (citing L. 2006, ch. 212, sec. 19). Considering the provisions *in pari materia*, the *Herrmann* court determined that because subparagraph (D) falls under subsection (d)(1), it "applies to all persons but those expressly excluded: persons sentenced for off-grid crimes committed on or after July 1, 1993, and persons committing a sexually violent crime on or after July 1, 2006, as stated in subparagraph (G)." 53 Kan. App. 2d at 153.

Ultimately, the *Herrmann* court concluded that the two provisions could both be read to have application, depending on the date of the offense. Subparagraph (D)'s shorter terms of postrelease supervision would apply to those sentenced for sexually violent crimes committed after July 1, 1993, but before July 1, 2006. Subparagraph (G)'s lifetime supervision would apply to those sentenced for sexually violent crimes committed on or after July 1, 2006. 53 Kan. App. 2d at 153.

Since the *Herrmann* opinion was filed, this court has agreed with its conclusion in other cases. See, *e.g.*, *State v. Candley*, No. 115,640, 2017 WL 2494948, at *4-6 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* June 19, 2017; *State v. Dackin*, No. 115,687, 2017 WL 2403349, at *2-3 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* June 28, 2017; *State v. Rothstein*, No. 114,749, 2016 WL 7031921, at *2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (July 25, 2017).

Knopp argues that *Herrmann* was wrongly decided and asks this court not follow it. Knopp is correct that this court is not bound to follow the decisions of previous panels of this court. See *State v. Cottrell*, 53 Kan. App. 2d 425, 434, 390 P.3d 44 (2017), *petition for rev. filed* February 15, 2017. Even so, this court does not lightly disagree with prior decisions reached by other panels. See *State v. Moore*, 52 Kan. App. 2d 799, 816, 377 P.3d 1162, *rev. granted* 305 Kan. 1256 (2016). The State responds that *Herrmann* correctly interpreted K.S.A. 2016 Supp. 22-3717. As a result, the district court properly determined that Knopp was subject to lifetime postrelease supervision under subparagraph (G).

Knopp argues that the *Herrmann* court misread the plain language of K.S.A. 2016 Supp. 22-3717(d)(1) and improperly read a timeframe into the statute. In particular, he contends that subsection (d)(1) simply provides that those subject to subparagraph (G) are not eligible for parole and does not state that any other subparagraph applies. In Knopp's view, both subparagraphs (D) and (G) could apply as they both fall under (d)(1), and the *Herrmann* court was wrong to read a timeframe limitation into the statute that was not readily found in it.

Knopp's reading of subsection (d)(1), however, would render the language of subparagraph (G) meaningless. All persons convicted of off-grid crimes committed after July 1, 1993, are ineligible for parole—it is not necessary to add that those subject to subparagraph (G) are ineligible for parole. See *McGann v. McKune*, 21 Kan. App. 2d 798, 801, 911 P.2d 811 (1995). Additionally, the language in subsection (d)(1) referring to those subject to subparagraph (G) was added at the same time subparagraph (G) was added to K.S.A. 22-3717. L. 2006, ch. 212, sec. 19. This demonstrates that the legislature intended that the mandatory postrelease-supervision terms provided in the subparagraphs that follow subsection (d)(1) would not apply to those subject to subparagraph (G), as discussed in *Herrmann*. See 53 Kan. App. 2d at 153.

7

Knopp's argument also does not address the simple fact that under his interpretation, K.S.A. 2016 Supp. 22-3717(d)(1)(G) would no longer apply to any defendant. *Herrmann*'s reading ensures that both subparagraphs (D) and (G) are in workable harmony, without rendering either provision meaningless or inapplicable. Notably, the Kansas Legislature recently amended K.S.A. 22-3717 to reflect the holding in *Herrmann*. As of May 18, 2017, subsection (d)(1)(D) now explicitly applies only to sexually violent crimes "committed on or after July 1, 1993, but prior to July 1, 2006." L. 2017, ch. 62, sec. 10. This strongly suggests that the legislature approved of and confirmed *Herrmann*'s interpretation of 22-3717.

Knopp's arguments also overlook the history of the 2013 amendments to subparagraph (D). As *Herrmann* described, the 2013 amendments shortened postrelease supervision for most crimes by removing the requirement that good-time credit (which shortens certain prison sentences by 15 or 20% for good behavior) be added to the postrelease supervision term. Compare K.S.A. 2012 Supp. 22-3717(d)(1)(A)-(C) with K.S.A. 2013 Supp. 22-3717(d)(1)(A)-(C); see *Herrmann*, 53 Kan. App. 2d at 153-54. These shortened postrelease terms applied retroactively to defendants who had already been sentenced. K.S.A. 2013 Supp. 22-3717(s)-(t) (providing that subsections [d][1][A]-[C] and [d][1][E] apply retroactively). But the legislature did not want to provide shorter postrelease terms to those who had committed certain crimes, including sexually violent crimes, so it amended subparagraph (D) to create an exception—good-time credit would still be added to the postrelease-supervision terms of defendants convicted of those crimes. 53 Kan. App. 2d at 153-54. Significantly, the legislature did not amend subparagraph (G) and has not since it was first enacted in 2006. This history supports the conclusion that the 2013 amendments did not do away with lifetime postrelease supervision for sexually violent crimes committed after July 1, 2006. *Dackin*, 2017 WL 2403349, at *2.

Knopp argues further that the Kansas Supreme Court's decision in *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012), casts doubt on the reasoning in *Herrmann*. In *Cameron*, a case decided before the 2013 legislative amendments, the defendant argued that the district court erred in sentencing him to lifetime postrelease supervision under (d)(1)(G) because the court had the authority and discretion to impose a shorter term under (d)(1)(B), which provided for 24 months of postrelease supervision based on the severity level of the crime. 294 Kan. at 898. In essence, the defendant argued that the rule of lenity required the district court to impose the shorter term. 294 Kan. at 899.

The *Cameron* court ultimately concluded that only subsection (d)(1)(G) applied to the defendant. The court discussed that the rule of lenity only applies if there is reasonable doubt about the meaning of a criminal statute. 294 Kan. at 899 (citing *State v. Chavez*, 292 Kan. 464, 468, 254 P.3d 539 [2011]). The court then considered K.S.A. 22-3717(d)(1) *in pari materia* and held that there was no reasonable doubt that the legislature intended that the more specific provision of (d)(1)( G) apply to those convicted of sexually violent offenses rather than the more general provision of (d)(1)(B). 294 Kan. at 900.

Knopp contends that the *Cameron* court implied that K.S.A. 22-3717 was ambiguous because the *Cameron* court "undertook a rule of lenity analysis." According to Knopp, the *Herrmann* court could not have resolved the issue by analyzing the plain language of the statute because the statute is ambiguous. Contrary to Knopp's arguments, the *Cameron* court did not make an "implied finding of ambiguity" and did not conduct a "rule of lenity analysis." In fact, *Cameron* held "there [was] no reasonable doubt" regarding which provision the legislature intended to apply and declined to apply the rules of strict construction and lenity reserved for ambiguous statutes. 294 Kan. at 899-900. See *State v. Wilson*, No. 116,381, 2017 WL 2212171, at *3-4 (Kan. App. 2017) (unpublished opinion) (rejecting identical argument), *petition for rev. filed* June 19, 2017.

Finally, Knopp argues that in *Herrmann*, the court's interpretation of K.S.A. 2016 Supp. 22-3717(d)(1) does not account for other amendments to the sentencing scheme thus, ignoring legislative intent and rendering other amendments void and meaningless. Before 2013, 21-6821 provided that any earned good-time credits would be added to the offender's postrelease supervision term. K.S.A. 2012 Supp. 21-6821(c) and (e)(2). In 2013, the Kansas Legislature amended 21-6821(c) and (e)(2) so that only offenders convicted of sexually violent crimes must serve any earned good-time credit as part of their postrelease supervision term. L. 2013, ch. 76, sec. 4. Knopp argues that the holding in *Herrmann* renders these amendments void because it is impossible to add time to a life term.

In *Herrmann*, the court did not specifically address the amendments to 21-6821, but it did discuss similar changes to K.S.A. 22-3717. As discussed above, the 2013 amendments to K.S.A. 22-3717 removed the requirements in subparagraphs (A)-(C) that good-time credits be added to the postrelease terms for most crimes. The legislature, however, created an exception for those convicted of sexually violent crimes (among others) in subparagraph (D). These amendments to K.S.A. 22-3717 mirror and reflect the legislative changes to 21-6821. See L. 2013, ch. 76, sec. 4 (amending 21-6821); L. 2013, ch. 76, sec. 6 (amending 22-3717). The *Herrmann* panel's interpretation of K.S.A. 2016 Supp. 22-3717(d)(1)(D) is perfectly consistent with the provisions in K.S.A. 2016 Supp. 21-6821. Based on the holdings from *Herrmann*, it is clear that good-time credit would be added to sentences ordered under K.S.A. 2016 Supp. 22-3717(d)(1)(D)—convictions of sexually violent crimes committed after July 1, 1993, but before July 1, 2006—but not to sentences ordered under K.S.A. 2016 Supp. 22-3717(d)(1)(G)—convictions for sexually violent crimes committed after July 1, 2006. The *Herrmann* court's reading did not render K.S.A. 2016 Supp. 21-6821(c) and (e)(2) meaningless or void. See *Wilson*, 2017 WL 2212171, at *4.

Knopp has failed to prove that *Herrmann* was wrongly decided or is no longer sound. This court adopts the *Herrmann* interpretation and reaches the same result. Knopp was convicted of sexually violent crimes—aggravated indecent liberties with a child—committed after July 1, 2006. See K.S.A. 2016 Supp. 22-3717(d)(1)(G). The district court was required to sentence him to lifetime postrelease supervision. Accordingly, the district court properly denied Knopp's sentencing request for 36 months of postrelease supervision.

Affirmed.