NOT DESIGNATED FOR PUBLICATION

No. 119,975

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENNETH E. FROST,
*Appellant*,

v.

JOE NORWOOD, et al.
*Appellees*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; SCOTT E. MCPHERSON, judge. Opinion filed April 5, 2019. Affirmed.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Ellsworth, for appellant.

*Robert E. Wasinger*, legal counsel, of Ellsworth Correctional Facility, for appellees.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM: Kenneth E. Frost, an inmate at the Ellsworth Correctional Facility, appeals the district court's dismissal of his petition for writ of mandamus. Frost argues that the district court should not have summarily dismissed the petition and that he is entitled to mandamus relief on the computation of his sentence. We conclude the district court reached the correct result in dismissing Frost's petition for writ of mandamus, and we affirm the district court's judgment.

1

In 1990, the district court sentenced Frost to an indeterminate prison term of 3 to 10 years in Jefferson County case 90CR118. A few years later, the district court sentenced Frost to an indeterminate prison sentence of 5 to 20 years in Pawnee County case 92CR111. The Kansas Department of Corrections (KDOC) aggregated both sentences to an indeterminate term of 8 to 30 years.

Frost was initially paroled in February 2001. He violated his parole conditions many times, was returned to custody, and was later released. Ultimately, the State filed new charges against Frost in Johnson County case 05CR597. In that case, the district court sentenced Frost to a determinate sentence of 204 months and ordered the sentence to be served consecutive to his Jefferson County and Pawnee County cases.

On April 27, 2008, Frost was "paroled to his determinate sentence" by the KDOC. While serving that sentence, Frost filed a K.S.A. 60-1507 motion challenging his Johnson County conviction. The record does not reflect the status or the outcome of that case.

In March 2018, the KDOC notified Frost that if his determinate sentence was overturned in the K.S.A. 60-1507 proceeding, his indeterminate sentence "will need to be reviewed prior to release." He was also informed in a letter that cases 90CR118 and 92CR111 would remain inactive "**unless** Johnson County Case 05CR597 is overturned prior to the original controlling max date associated with the 8-30 year sentence, April 27, 2023. If the Johnson County Case is overturned prior to April 27, 2023, the status of the indeterminate sentences will need reviewed and may change."

Frost disagreed with the KDOC notice about the status of his indeterminate sentence. He initiated the prison grievance process, asking for a declaration that his indeterminate sentence had terminated and could not be reinstated. He argued that

2

holding him on the indeterminate sentence would amount to illegal incarceration. Frost's unit team supervisor responded to Frost's grievance by stating:

> "When you paroled to your determinate sentence your prior indeterminate sentences were made inactive and you are now serving 204 months on case # 05CR597. Comments only stated that the old sentence would be reviewed if the new was overturned. As long as there are no changes to your new term your status of only serving on the determinate sentence remains in effect. Your projected release date is 12-03-2022."

Frost again submitted a grievance stating that his indeterminate sentence could not be reviewed in the future because it had legally terminated. Frost's unit team supervisor responded that his grievance "pertains to a classification decision-making process and as such is not grievable." Frost appealed to the warden. The warden agreed with the unit team supervisor but added that "it is impossible for you to receive any relief for something that has not occurred." Frost appealed to the secretary of corrections (the Secretary), who upheld the decisions made by the prison staff.

On May 21, 2018, Frost filed a pro se petition for writ of mandamus under K.S.A. 60-801 in the district court of Ellsworth County, naming the Secretary as the respondent. In the petition, Frost asked the district court to order the Secretary to terminate his indeterminate sentence. Noting that "a consecutive sentence is one which commences at the termination of another term of imprisonment to which an accused has been sentenced," he argued that his indeterminate sentence terminated on April 27, 2008, when he was conditionally released to begin serving his determinate sentence. Frost also filed a motion for appointment of counsel.

On August 8, 2018, the district court summarily dismissed Frost's petition, finding that it failed to state a claim for which he was entitled to relief. The district court ruled:

3

"Frost argues that when he was paroled from his indeterminate sentences, Jefferson County case 1990-CR-118 and Pawnee County case 1992-CR-111, to his determinate sentence in Johnson County case 2005-CR-597, KDOC must declare his indeterminate sentences terminated. He asserts that to not do so amounts to KDOC illegally detaining him. In response, KDOC states that Frost's grievance is a 'non-grievable issue' per K.A.R. 44-15-105(a)(2). Additionally, Warden Dan Schnurr correctly points out that Frost is not currently being held on his indeterminate sentences and that he cannot be given relief from something that has not occurred. The court agrees, and for these reasons orders that Frost's Petition is dismissed."

Frost timely appealed the district court's judgment. The district court appointed counsel for this appeal.

ANALYSIS

As a preliminary matter, we will address whether Frost's grievance is ripe even though the KDOC will only review Frost's indeterminate sentence if his determinate sentence is overturned in the future. The justiciability doctrine requires that issues be ripe for decision. In other words, "issues must have taken shape and be concrete rather than hypothetical and abstract." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 892, 179 P.3d 366 (2008). Kansas courts do not have the power to give advisory opinions. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

Frost complains that holding him on his indeterminate sentence would amount to illegal incarceration because he has already served that sentence. The Secretary notes that Frost is not currently serving his indeterminate sentence and will only be held on the indeterminate sentence in the future if his Johnson County conviction is overturned. If Frost's Johnson County conviction is never overturned, then the KDOC will never review his indeterminate sentence. In that sense, Frost's grievance raises a hypothetical question.

4

But Frost's appeal raises the question of whether the KDOC had a duty to declare Frost's indeterminate sentence "terminated" when Frost was paroled to his consecutive determinate sentence on April 27, 2008. The KDOC gave Frost notice that his indeterminate sentence may be revived in the future. This issue presents a concrete legal question that can be resolved by interpreting the sentencing statutes. As a result, we conclude that Frost's grievance is ripe for review.

Turning to the merits, Frost argues that the district court should not have summarily dismissed his petition and that he is entitled to mandamus relief on the computation of his sentence. The Secretary no longer argues that this issue is "non-grievable." Instead, the Secretary argues that mandamus relief is inappropriate because Frost had no clear right to relief under K.S.A. 2018 Supp. 22-3717(f), the KDOC had no clear duty to act in the manner Frost demanded, and Frost had an alternative remedy.

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law." K.S.A. 60-801. In other words, mandamus is a remedy to compel a public official to perform a clearly defined duty imposed by law and not involving the exercise of discretion. *State ex rel. Morrison*, 285 Kan. at 907. Mandamus does not lie to enforce a right in substantial dispute. *Ambrosier v. Brownback*, 304 Kan. 907, 911-12, 375 P.3d 1007 (2016).

> "The only acts of public officials that the courts can control by mandamus are those strictly ministerial, meaning the public officer or agent is required to perform based upon a given set of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion about the propriety or impropriety of the act to be performed." *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 717, 792 P.2d 971 (1990).

5

"Mandamus is not a common means of obtaining redress but is available only in rare cases, and as a last resort, for causes which are really extraordinary. Mandamus is not the correct action where a plain and adequate remedy at law exists." *Bohanon v. Werholtz*, 46 Kan. App. 2d 9, Syl. ¶ 3, 257 P.3d 1239 (2011). Whether mandamus is an appropriate form of relief requires the interpretation of statutes, over which this court has unlimited review. *State ex rel. Slusher v. City of Leavenworth*, 285 Kan. 438, 443, 172 P.3d 1154 (2007).

Based on these principles, Frost would be entitled to mandamus relief only if he can establish: (1) he has a clear right to relief; (2) the KDOC's duty is clearly defined; and (3) he has no other adequate remedy. *Sperry v. Lansing Correctional Facility*, No. 116,269, 2017 WL 1534852, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 988 (2018). Frost contends that K.S.A. 21-4608(c) (now K.S.A. 2018 Supp. 21-6606[c]) and K.S.A. 2018 Supp. 22-3717(f) create a duty on the KDOC to declare his indeterminate sentence terminated and release him if and when his determinate sentence is overturned. We will address these statutes in turn.

*K.S.A. 2018 Supp. 21-6606(c)*

Frost committed his Johnson County crime in 2001 while on parole from his indeterminate sentence. It was mandatory that his Johnson County sentence be served consecutive to his prior sentences under K.S.A. 21-4608(c) (now K.S.A. 2018 Supp. 21-6606[c]), which reads:

> "Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release."

6

A "consecutive sentence" is

"a series of two or more sentences imposed by the court in which the minimum terms and the maximum terms, respectively, are to be aggregated, or a series of two or more sentencing guidelines sentences in which the prison terms are to be aggregated pursuant to K.S.A. 2011 Supp. 21-6819 and amendments thereto." K.A.R. 44-6-101(b)(3).

In other words, a consecutive sentence is a series of two or more sentences that are aggregated; and the rules of aggregation vary depending on whether the sentences being aggregated are indeterminate or determinate sentences.

*K.S.A. 2018 Supp. 22-3717(f)*

The parties agree that K.S.A. 2018 Supp. 22-3717(f) applies (which has not substantially changed since Frost committed his crime). This subsection reads:

"(f) If a person is sentenced to prison for a crime committed on or after July 1, 1993, while on probation, parole, conditional release or in a community corrections program, for a crime committed prior to July 1, 1993, and the person is not eligible for retroactive application of the sentencing guidelines and amendments thereto pursuant to K.S.A. 21-4724, prior to its repeal, *the new sentence shall not be aggregated with the old sentence, but shall begin when the person is paroled or reaches the conditional release date on the old sentence.* If the offender was past the offender's conditional release date at the time the new offense was committed, the new sentence shall not be aggregated with the old sentence but shall begin when the person is ordered released by the prisoner review board or reaches the maximum sentence expiration date on the old sentence, whichever is earlier. The new sentence shall then be served as otherwise provided by law. The period of postrelease supervision shall be based on the new sentence, except that those offenders whose old sentence is a term of imprisonment for life, imposed pursuant to K.S.A. 21-4628, prior to its repeal, or an indeterminate sentence with a maximum term of life imprisonment, for which there is no conditional release or maximum sentence expiration date, shall remain on postrelease supervision for life or until discharged from supervision by the prisoner review board." (Emphasis added.)

7

In other words, K.S.A. 2018 Supp. 22-3717(f) coordinates the old indeterminate sentence with the new determinate sentence, but "the old and new sentences are not aggregated, or run consecutively." *Turner v. Kansas Department of Corrections*, No. 102,954, 2010 WL 3063172, at *5 (Kan. App. 2010) (unpublished opinion). The *Turner* court cautioned that the statute

> "determines *only the start of the new sentence*, leaving the term of the old indeterminate sentence untouched and unaffected. To hold otherwise would read into the statute something not readily found therein. [Citation omitted.] The current provision delays the running of a new sentence while an inmate is incarcerated on an old indeterminate sentence. Upon parole or conditional release, or upon reaching the maximum sentence expiration date for the old indeterminate sentence, the new sentence begins." 2010 WL 3063172, at *5.

In *Turner*, the defendant remained subject to his old indeterminate sentence though serving time on a new Missouri sentence. The court held that the Kansas parole board retained authority to act on parole violations. 2010 WL 3063172, at *5-6. Here, Frost was paroled to his determinate sentence. If Frost's determinate sentence is eventually overturned, it does not follow that he would necessarily be free from supervision. And a parolee "is subject to serving out the remainder of his or her prison sentence upon a violation and subsequent revocation of parole status." *McGann v. McKune*, 21 Kan. App. 2d 798, 801, 911 P.2d 811 (1995).

K.S.A. 2018 Supp. 22-3717(f) does not create a clearly defined duty on the KDOC to declare Frost's indeterminate sentence terminated. And the provision does not say what happens if the determinate sentence is overturned on appeal. Instead, it determines only the start of the new sentence. Thus, the law Frost has cited does not require the KDOC to do what he asks. Mandamus is an extraordinary remedy. Without a clearly defined duty, courts will not issue a writ of mandamus. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 620, 244 P.3d 642 (2010). Mandamus relief is not appropriate here. If Frost

8

believes the KDOC has not accurately calculated his sentence, he can challenge the sentence calculation under K.S.A. 2018 Supp. 60-1501. *State v. Smith*, No. 116,063, 2018 WL 1247181, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 308 Kan. 1600 (2018).

Frost cites *Price v. Simmons*, 31 Kan. App. 2d 631, 632, 71 P.3d 1164 (2002) (*Price II)*, for the contention that "a consecutive sentence 'is one which commences at the termination of another term of imprisonment to which [an] accused has been sentenced.'" He argues this statement supports his view that his indeterminate sentence "terminated" when he was paroled to serve his determinate sentence.

Some background is useful. In *Price v. State*, 28 Kan. App. 2d 854, 855, 21 P.3d 1021 (2001) (*Price I*), Price argued that he was eligible for conversion of his indeterminate sentence because he had served the maximum 20-year sentence for rape and so the rape conviction should not count against him in determining eligibility for the conversion of his aggravated burglary sentence. The KDOC treated Price's convictions as aggregated and, because he had not exhausted the aggregated time, the KDOC said Price was still serving time on the rape charge and his sentence was ineligible for conversion. 28 Kan. App. 2d at 855-56. This court held that the aggregation rules in K.S.A. 21-4608(f) were used to determine the time served on multiple sentences, the sentence begin date, and parole eligibility and conditional release dates, but the aggregation rules were not applicable to determining whether Price's sentence was eligible for conversion. 28 Kan. App. 2d at 858. The court then added:

> "Moreover, the State's suggestion that Price is simultaneously serving his sentences for aggravated burglary and rape is erroneous. 'Consecutive sentences may not be treated collectively as one for the aggregate term of all, and the identity of the punishment for each must be preserved.' 24 C.J.S., Criminal Law § 1582. In other words, a consecutive sentence 'is one which commences at the termination of another term of imprisonment to which [an] accused has been sentenced. A prisoner serving the first of

9

several consecutive sentences is not serving the other sentences . . . the prisoner serves only one sentence at a time.' 24 C.J.S., Criminal Law § 1582. See *State v. Bell,* 6 Kan. App. 2d 573, 574, 631 P.2d 254 (1981) (defining 'consecutive sentences' as sentences 'following in a train, succeeding one another in a regular order'). As a result, on July 1, 1993, Price was either on conditional release for aggravated burglary or for rape, but not for both offenses." 28 Kan. App. 2d at 858.

In *Price II*, using "selected terms taken from the text of [*Price I*]," Price claimed that, because this court had said consecutive sentences may not be treated collectively, the KDOC had miscalculated his maximum discharge date. 31 Kan. App. 2d at 633. But the court held that for the purpose of establishing Price's maximum discharge date, the two convictions remained aggregated. 31 Kan. App. 2d at 634. Thus, which rules apply depends on the issue. The *Price I* analysis is limited to conversion determinations. See *Anderson v. Bruce*, 274 Kan. 37, 50, 50 P.3d 1 (2002) (holding that the fact that an inmate's sentences retained their individual identities for conversion purposes did not entitle the inmate to have his sentences unaggregated to determine parole eligibility, conditional release dates, and time served on multiple sentences).

To sum up, K.S.A. 2018 Supp. 22-3717(f) states that "the new sentence . . . shall begin when the person is paroled." That provision does not say the old sentence is "terminated." Frost has not shown that the KDOC has a clearly defined duty to say so. As a result, we conclude the district court did not err in summarily dismissing Frost's petition for writ of mandamus. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (finding that if a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision).

Affirmed.

10